### Dallas County v. Club Land and Cattle Company et al.

#### . No. 1071.   Decided January 30, 1902.

**1.—County School Land—Expense of Subdivision and Sale—Compensation in Land.**

The commissioners court had no authority, under section 6, article 7, Constitution of 1876, to convey a part of the public school land as compensation to one employed to subdivide it for the purpose of putting it on the market.   (Pp. 205-208.)

**2.—Same—Expense Chargeable to General Fund—Construction.**

The constitutional provision that county school lands "and the proceeds thereof" should be held by the counties in trust for the benefit of public schools, should be construed, in view of the general policy, appearing in legislation, to preserve the entire proceeds for public schools, as meaning the gross proceeds; and the expense of subdividing and selling the lands was properly chargeable against the general revenues of the county and not against their proceeds.   (Pp. 207, 208.)

**3.—Same.**

Such construction is aided also by the rule that a word is to be taken in its broadest sense unless the context or reason of the law demands a restricted meaning, and by the fact that the county was not a mere trustee, but derived a benefit from the fund.   (P. 208.)

**4.—Trust Fund—Claim Not Running with Land.**

A remote vendee, on the recovery by a county of school land illegally conveyed as compensation for subdividing such lands for sale, was not entitled to have such recovery conditioned on the payment by the county of its debt to the original grantee, which it had attempted to settle by conveying the land; such claim being a charge against the general revenues, and not against the trust funds, would not be a charge on the land, and as a personal claim was subject to limitation.   (Pp. 208, 209.)

**5.—Administrator's Sale—Warranty.**

An administrator can not bind the estate by a covenant of warranty on sale of land.   (P. 209.)

**6.—Same—Personal Warranty.**

An administrator is not personally bound on a warranty or oral promise given upon sale of lands of the estate which distinctly states that he warrants as administrator and not personally.   (P. 209.)

**7.—Contract—Merged in Written Instrument.**

See oral undertaking of administrator as to making good the title to lands sold, held to be merged in his subsequent written conveyance with warranty. (P. 209.)

Error to the Court of Civil Appeals from the Second District, in an appeal from Archer County.

The county sued the cattle company and obtained judgment which, on the latter's appeal, was in part reversed and rendered, and the county obtained writ of error.

*R. B. Allen, G. G. Wright,* and *K. R. Craig,* for plaintiff in error.—
The commissioners court had no authority or power to convert the
school lands, and such conversion could not have been validated so as
to pass title by the payment of money into the school fund in lieu of the
lands. Tomlinson v. Hopkins County, 57 Texas, 574; Const. 1876, art.
7, sec. 6.

No equity nor equitable charge against a trust fund can arise out of
the unauthorized and void transactions of the trustee with reference
thereto. To refuse a recovery to the county in its capacity as trustee
for the school fund until and unless the said county shall have in its
individual capacity refunded the purchase money, would have the effect
of enabling the county to do that by indirection which it is forbidden
from doing directly; as by neglecting or refusing to make such payment
the title would become vested under a void deed, and the land lost to
the school fund. The claim for the value of the services of John Henry
Brown is a legal and not an equitable demand against Dallas County.
Brown's cause of action for the value of his services arose at the date
the services were rendered and the work accepted by the commissioners
court. The conveyance of the land to Brown being void and the fact
that it was void being known to both parties, was no payment. The
liability of the county and the claim of Brown remained unaffected and
unimpaired. The conveyance did not convert the legal demand of
Brown into an equitable claim. Brown had notice not only that the
conveyance was void, but also that no lapse of time or laches by the
commissioners court could ever have the effect of ripening it into an
effective conveyance. He had the right immediately upon the execution
of the conveyance to repudiate it and demand payment for his services.
Failing to make this demand within the period prescribed by the statute
of limitations his claim is barred. He could not postpone the operation
of the statute by his own laches. There was no fraud, nor fraudulent
concealment, accident, or mistake in the transaction out of which any
equities would arise. Brown and his assignees had no right to assume
that their title was good, or that it would not be attacked. Hence there
is and was no such equity between the parties or in the subject matter
as would prevent the operation of the statute of limitations on Brown's
claim against the county. 1 Pom. Eq. Jur., sec. 130; 13 Am. and Eng.
Enc. of Law, 1 ed., 726; Eustis v. Cowherd, 23 S. W. Rep., 737; Con-
veyance no payment, see 18 Am. and Eng. Enc. of Law, 1 ed., 174, and
cases cited, 167.

Dallas County, as owner of the legal title to the school land, owned
the same simply as trustee, without interest, for the permanent school
fund of Dallas County. As trustee for such school fund Dallas County
had no individual interest therein. Such fund having been unquestion-
ably and confessedly diverted by an unauthorized act of the Commission-
ers Court of Dallas County, it was the duty of Dallas County to sue for
and recover such fund. It is conceded, for the purposes of this case,
as found by the court below, that Dallas County in its individual

capacity was, on quantum meruit, indebted to John Henry Brown in the sum of $500; that the Club Land and Cattle Company is, by reason of the conveyances above stated, the owner by equitable assignment of the claim of John Henry Brown against Dallas County. But the claim of said company is simply a legal demand against Dallas County in its individual capacity, and being barred by the statute of limitation could not be set up in reply or as a bar to the suit of Dallas County, as trustee, for a recovery of the land. The attempted diversion of this trust fund as shown by the record was void on its face, and no subsequent purchaser could claim to be a purchaser in good faith. The Court of Civil Appeals found, as a matter of fact, that the Club Land and Cattle Company had actual knowledge and advice, at the time of its purchase, that the conveyance of said land by Dallas County was unauthorized and void. No equity can arise in favor of one who is neither deceived nor imposed on, and who knows all the facts. It would be contrary to public policy as well as destructive of the permanent school fund to hold that an unauthorized diversion of the same by a commissioners court could not be set aside later except upon the penalty that the trustee, the county, should do individual equity as between itself and the vendee.

*Matlock, Miller & Dycus,* for plaintiff in error, the Club Land and Cattle Company.—The Court of Civil Appeals erred in holding that the estate of E. W. Harrold, deceased, was not bound to refund the sum of $1066.50 paid by the appellant the Club Land and Cattle Company as the purchase price for the land in controversy in this suit, because the uncontradicted evidence shows that no title was vested in the estate of E. W. Harrold, deceased, and that both Bishop, the administrator, and Carver, the agent of appellant, knew that there was no title to the land in the estate of Harrold, and Carver would not have bought the land and paid for it but for the promise of said Bishop to procure a title from Dallas County to the land in controversy, which was public school land, and that the estate of Harrold had failed to procure such title. Lamb v. James, 87 Texas, 488; Tomlinson v. Hopkins County, 57 Texas, 574; Palo Pinto County v. Gano, 60 Texas, 249; Roehl v. Pleasants, 31 Texas, 48; Able v. Chandler, 12 Texas, 91; Crayton v. Munger, 9 Texas, 288; Tarpley v. Poage, 2 Texas, 148; Giddings v. Heiskill, 44 Texas, 386; Schmitt v. Jacques, 62 S. W. Rep., 956.

The Court of Civil Appeals erred in holding that R. B. Bishop personally was not bound by his promise to procure from Dallas County a good and sufficient deed to the land. The lower court found that Carver relied upon the promise of Bishop that he would procure such deed, and relying upon that promise Carver, agent for plaintiff in error, paid the purchase money. While the covenant of warranty in that deed stipulated that Bishop did not bind himself personally, still this action is not upon the warranty, but outside and independent of it, and it was the verbal agreement of Bishop to procure a good title, and under the circumstances the statute of fraud is not applicable. Campbell v. Pucket,

1 Posey U. C., 465; Hartley v. Sanford (N. J.) 48 Atl. Rep., 1009; Demeritt v. Bickford, 58 N. H., 523; Skell v. Stephens, 50 Mo., 375; Thurston v. James, 6 R. I., 106; Hills v. Creyon (S. C.), 12 Am. Dig., 663; Sayre v. Edwards, 19 W. Va., 352; Elsin v. Spraker, 100 Ind., 374; Hess v. Rothschild, 69 N. Y. Supp., 957; Fitzgerald v. Morrisey, 15 N. W. Rep., 233; Little v. McCarter, 86 N. C., 233; Roche v. Chaplin, 1 Bailey (S. C.), 419; Wickham v. Park Assn., 80 Ill. App., 523; Aldrich v. Ames, 75 Mass., 76; Gald v. Harp, 43 S. W. Rep., 144; King v. Upton, 4 Me., 387; Calkins v. Chandler, 36 Mich., 320; Ballard v. Burton, 16 Law. Rep. Ann., 667; Anson on Contracts, 62; Shadwell v. Shadwell, 9 C. B. N. S., 159; Lyons v. Daugherty, 26 S. W. Rep., 146; Lemmon v. Box, 20 Texas, 329; Hart v. Garcia, 2 Texas Ct. Rep., 997.

The court erred in holding that Bishop was not bound, either as administrator or personally, because if he was not bound in his capacity as administrator he was certainly bound personally, inasmuch as some person must be bound by the terms of the contract to procure the title upon the faith of which promise the sum of $1066.50 was paid. Warren v. Harrold, 49 S. W. Rep., 364.

The County Commissioners Court of Dallas County, in the year 1879, was vested with authority to convey all or any part of the lands granted to Dallas County for school purposes, and John Henry Brown having performed services for said county in subdividing this school land, and said services being of the value of $750 and the land in controversy of the value of $500, the court had the right to sell said land to said John Henry Brown for $500 paid in services, and thereby it became obligatory on the part of the county to pay to the permanent school fund of said county the purchase price for said land.

Inasmuch as defendant the Club Land and Cattle Company was in possession of the land sued for, claiming it under a deed from Dallas County, the county could not recover the land without doing equity. Cook v. Cooper, 7 Law. Rep. Ann., 273 and notes; Payne v. Ross, 30 S. W. Rep., 671; Riggs v. Polk, 21 S. W. Rep., 1013; Waggoner v. Alvord, 8 Texas, 365; Jones v. Paul, 59 Texas, 46; Fayette Co. v. Faisin, 44 Texas, 586; Tomlinson v. Hopkins Co., 57 Texas, 574; Cole v. Bammel, 62 Texas, 108; Pass v. Brooks, 34 S. E. Rep., 228; Paul v. Chenault, 44 S. W. Rep., 682; Spect v. Spect, 13 Law. Rep. Ann., 137.

*Capps & Cantey* and *Theodore Mack,* for defendant in error Bishop. The doctrine of caveat emptor applies to purchasers under administration sales, and, in the absence of fraud, a failure of title in an executed sale does not entitle the purchaser to recover, from the administrator in his trust capacity or the estate, the consideration paid for the land. Especially is this true where the purchaser accepted the deed and went into possession with full knowledge of the fact that he acquired no title at the administrator's sale. Lynch v. Baxter, 4 Texas, 431; Edmondson v. Hart, 9 Texas, 554; Thompson v. Munger, 15 Texas, 523; Walton

v. Reager, 20 Texas, 103; Williams v. McDonald, 13 Texas, 322; Hawpe v. Smith, 25 Texas Supp., 448; Doxey v. Burns, 37 Texas, 719; The Monte Allegre, 9 Wheat., 616; Estes v. Alexander, 90 Mo., 453; Arnold v. Donaldson, 46 Ohio St., 73; Boggs v. Fowler, 16 Cal., 560; see also exhaustive note in 2 Notes on U. S. Reports, pp. 307, 308.

Where the pleading alleges that the vendor purchased at administrator's sale, acting under orders of court, and with full knowledge of the fact that no title was being conveyed, he takes title by virtue of the order of sale and decree of confirmation, and can not be heard to assert that the administrator by a parol assurance promised to perfect title in the future. Hence the error of the trial judge in overruling general demurrer. Same authorities.

GAINES, Chief Justice.—This was an action of trespass to try title brought by Dallas County against the Club Land and Cattle Company to recover a tract of about 700 acres of land, and was tried by the court without a jury. The trial judge filed his conclusions of fact and the cause was appealed without a statement of facts. From the judge's findings, the following facts appear:

Sometime before the 9th day of June, 1879, the Commissioners Court of Dallas County entered into a contract with John Henry Brown, in which Brown agreed to survey, subdivide, map, and classify for the purposes of sale the school lands of the county, and the court promised to pay him for the work $250 in money and to convey to him a portion of the land. Brown complied with the contract on his part and the court, on the day named above, paid him the money consideration, as promised, and caused to be conveyed to him that portion of the county school lands which is now in controversy in this suit. Brown sold and conveyed the land, and the title, such as he had, passed by a regular chain of conveyances to one E. W. Harrold. Harrold died and R. B. Bishop became the administrator of his estate. The administrator obtained an order of the County Court to sell this land, as well as other lands of the estate, and agreed upon a sale of the tract in controversy to one Carver, who was acting solely for the Club Land and Cattle Company. The sale was reported and approved, and thereafter the purchase money was paid and a deed of conveyance executed by the administrator to Carver. But before the deed was executed, Carver became apprised of the alleged defect in the title, and presumably for that reason the following stipulation was inserted therein: "I do not bind myself personally, and I make this covenant of warranty in my capacity as administrator so far as I have the power and authority to do and no further." It would seem that the deed contained a covenant of warranty, but if so, it does not appear from the conclusions of fact, nor do we deem it a matter of any importance. The trial judge in his findings also found the following facts: "That Bishop at the time of the delivery of the deed of date October 21, 1898, to Carver, promised him, Carver, that he would perfect the title to the land sued for and secure a good deed from

Dallas County to said land. That this assurance and promise was made: by Bishop, acting as administrator, and was not made by him as an individual or for the purpose of binding himself personally so to do.. That he, Bishop, knew that the estate which he represented had no title to the land sued for by plaintiff herein, and that Carver would not have accepted the title to the land but for the promise of the administrator to perfect the title. That Bishop made efforts to procure a title from Dallas County, but failed to do so." After the execution of the deed to him, Carter conveyed the land by a special warranty deed to the Club. Land and Cattle Company.

It was also found that Brown's services in subdividing and classifying the land were of the reasonable value of $750, and, as before stated,. $250 had been paid him in money.

R. B. Bishop was vouched in as party defendant by the Club Land and Cattle Company and a recovery was asked against Bishop, both in his individual and in his capacity as administrator, upon the warranty contained in the deed, and upon his verbal promise in the event the plaintiff should prevail in its suit. The land and cattle company also prayed that, in the event of a recovery by the plaintiff, he should have a judgment for the unpaid balance of the value of Brown's services and that the recovery should be made upon condition of the payment to it of such balance. The court gave judgment for the plaintiff for the land and rents and denied any recovery for the unpaid balance of Brown's services, and also adjudged a recovery in behalf of the Club Land and Cattle Company against Bishop as administrator for the purchase money paid to him for the land.

The Club Land and Cattle Company and Bishop both appealed, and,. upon the appeal, the Court of Civil Appeals reversed the judgment against the Club Land and Cattle Company in so far as it denied such company a recovery for the balance it found to be due for Brown's services, but affirmed the judgment in favor of Dallas County for the land in controversy and gave the Club Land and Cattle Company judgment against plaintiff for such unpaid balance. But it also reversed the judgment in favor of the Club Land and Cattle Company against Bishop, as administrator, and adjudged that it should take nothing against him either individually or as administrator.

As between Dallas County and the defendant company, the first question is: Did the commissioners court of the county have the power to convey a part of its school lands for the services of Brown in subdividing and classifying them for the purpose of putting them on the market for sale? The date of the acquisition of the lands by the company does not appear from the conclusions of fact. But it does appear that the contract with Brown was entered into in June, 1879, at which time the Constitution of 1876 was in force. Therefore, the contract was subject to its limitations. So far as we are aware, no statute has ever been passed, either by the Congress of the Republic or the Legislature of the State, which provided the manner in which the county school lands should

be sold, except the Act of November 1, 1866. Laws 1866, p. 74. That act authorized the "police courts," as the county boards were then called, to sell the school lands of their respective counties upon being empowered to do so by the voters of the counties, and directed specifically the manner of sale. It also provided that expenses of the sale should be paid out of the interest arising from the proceeds of the sale. Original section 6 of article 7, of the Constitution of 1876, in so far as it bears upon the questions in this case, reads as follows: "All lands heretofore or hereafter granted to the several counties of this State for education or schools are of right the property of said counties respectively to which they were granted, and title thereto is vested in said counties, and no adverse possession or limitation shall ever be available against the title of any county. Each county may sell or dispose of its lands in whole or in part in manner to be provided by the commissioners court of the county. * * * Said lands, and the proceeds thereof, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein; said proceeds to be invested in bonds of the State of Texas, or of the United States, and only the interest thereon to be used and expended annually." This clearly supersedes and repeals the Act of 1866, for the reason that the act prescribes the manner of making the sale and makes the power dependent upon a popular vote, while the Constitution gives the absolute power of sale to the commissioners court and leaves them free to provide the manner of sale. The determination of the case must, therefore, depend upon the construction of the language just quoted.

We have no decisions which have an important bearing upon the question. In the case of Tomlinson v. Hopkins County, 57 Texas, 572, it was held that the commissioners court could not contract to give a surveyor a part of the land to be acquired as a compensation for his services in locating and surveying the land. The ground upon which the decision was based was that the statutes under which the lands were acquired prescribed that the expenses of locating the certificates should be paid out of the county treasury. Pasch. Dig., arts 3464-5, 3474-6. In Pulliam v. Runnels County, 79 Texas, 363, a similar ruling was made with reference to lands located for the counties under the provisions of articles 4032 and 4033 of the Revised Statutes of 1879. In view of the express provisions of the statutes upon which these decisions are based, the question there presented is clearly distinguishable from that presented in this case. But they forcibly illustrate the policy of our legislation with reference to the school lands of the counties and throw some light upon the meaning of the provision of the Constitution on that subject. Here the question is not as to the power of the commissioners court to pay for locating the certificates by a conveyance of a part of the land, but it is as to the power to convey a part of the land already located in payment for services in subdividing them for the purpose of placing them upon the market for sale in separate parcels. In Pulliam v. Runnels County, cited above, it is in effect held that the commission-

ers courts are not authorized to dispose of the lands otherwise than by sale or lease. It would seem, therefore, that the conveyance of the land for any other consideration than that of money would be unauthorized.

But it is plausibly argued, in substance, that a conveyance of a tract of land at its market value in payment of a proper service for the benefit of the fund is the same, in effect, as if the land had been sold and the proceeds applied to the payment of such services, and that therefore no substantial reason exists why the conveyance in this case should not be valid. It would seem that if the county, as the trustee of the special school fund, had incurred a debt which was properly chargeable against the fund, its commissioners court might sell a part of the land directly to the creditor in discharge of the debt. But we are of opinion that a debt created by a county as an expense incurred in selling school lands can not be charged either against the lands themselves or the proceeds of their sale. The declaration in section 6 of article 7 of the Constitution is that "Said lands and the proceeds thereof, when sold, shall be held alone as a trust for the benefit of the public schools therein." The difficulty of construction grows out of the indefiniteness of the meaning of the word "proceeds." If by the word is meant the gross proceeds, then we think it means that no part thereof could be used for the purpose of paying the expenses of the sale; for the section also provides, in effect, that the proceeds previously mentioned shall be invested in certain securities as a permanent fund for the use of the schools of the county, and that the interest only is to be annually expended. If net proceeds is meant, that is, what remains of the gross proceeds after paying the expenses of the sale, then it would seem that the expenses of the sale were properly payable out of the purchase money of the land itself. But in view of the policy of the law, as evinced by the previous legislation upon the subject and of the language of the section itself, we are of opinion that by "proceeds," as used in the section under consideration, is meant the entire proceeds and not the net proceeds. The acts of the Congress of the Republic, as was held in Tomlinson v. Hopkins County, supra, required the counties to pay the expense of locating the certificates out of their ordinary funds; and the Act of March 13, 1875, which granted four leagues of land for educational purposes to certain counties which had not theretofore received school lands, placed such counties upon the same footing with those which had previously acquired such lands, and provided that the counties should pay no fees in the General Land Office. The Act of November 1, 1866, which provided for a sale of the county school lands, expressly made the expenses of the sale payable out of the interest upon the proceeds. This legislation tends to show that the policy was to preserve the entire lands and their entire proceeds intact as a permanent school fund for the use of the public schools of the county. The words "said lands," as used in section 6, evidently mean all the lands. The provision embraces as well all lånds that might thereafter be granted as well as those which had been previously acquired, and it would seem to have been contem-

plated that in case of future grants, all the lands which were granted to a county should become its permanent special school fund and that no part should be given for the expenses of locating and surveying them. In other words, it was intended that such expenses should be paid by the county from its general fund. If such was the intent as to the lands themselves, it is to be inferred that there was a like intention as to the proceeds,—that the entire proceeds should be held and that the county should pay the expenses of a sale, if any, out of its own proper funds.

But, in any event, the word "proceeds" in the section we are considering is not restricted by any other words which qualify its meaning and should therefore be applied in its broadest sense unless the context or the reason of the provision should show that it was used in a less enlarged sense. The dim light of the context in this case tends rather to show that it was intended to mean the gross proceeds,—that is, the entire purchase money. As to the reason of the provision, it may be urged that since the county is made a mere trustee, it is unreasonable to suppose that it was intended to charge it in its individual capacity with the expense of administering the trust fund. The answer is that while in legal contemplation the county is but a trustee and the school fund the beneficiary, the county has an important interest in the maintenance of public schools within its limits; and that it is not unreasonable that the framers of the Constitution should have deemed it politic to make the expense of administering a fund set apart for the support of public schools in the county a charge upon its general revenues. Since the lands are the gift of the State for the special benefit of the educational interests of the county, it is not a hardship to require the county administration to bear the expense of converting the land into money. Our conclusion is that the Commissioners Court of Dallas County did not have the power to convey the land in controversy to John Henry Brown in payment of his services in subdividing the county school lands for sale, and that the District Court and the Court of Civil Appeals did not err in so holding.

The next question is, was the Club Land and Cattle Company entitled to any recovery against Dallas County? Undoubtedly, John Henry Brown had a just claim against the county for the unpaid balance of the value of his services in subdividing the land. But we think it follows from what has already been said that this was a claim against the county proper, and not against it as trustee of its school lands. If it had been a claim properly chargeable upon the trust fund, we think it would follow from the previous decisions of this court that the county could not recover the land without first reimbursing the defendant company for Brown's services. But the distinction between Dallas County in its ordinary corporate capacity and Dallas County as trustee must be kept in mind. Brown's services, while rendered for the benefit of the trust fund, were rendered at the instance of the county, and it was the

duty of the county, under the law, to discharge the debt from its general revenues, and it was not a debt against the fund. The claim against the county was barred by the statute of limitations. The county, as trustee, was entitled to recover the land free of any incumbrance, the claim of Brown's services not being chargeable against the trust fund. We conclude upon this branch of the case that the ruling of the trial court. upon this point was correct and that the Court of Civil Appeals erred in reversing the judgment in that particular.

Was Bishop bound, either individually or as administrator, upon either the warranty in the deed or upon his oral promise? The written warranty expressly declares, in effect, that he does not bind himself personally; and the trial judge found in his conclusions of fact, as we have seen, that the oral promise was made by him in his fiduciary capacity and not with the intention to bind himself personally.

We think it clear that an administrator can not bind the estate by his covenant of warranty. Lynch v. Baxter, 4 Texas, 431; Able v. Chandler, 12 Texas, 88; Ward v. Williams, 45 Texas, 617. His duty is to sell just such title as the estate has and his deed can have no other effect. The policy of the law is to require an estate to be administered and the administration closed with as little delay as may be practicable. To permit the administrator to bind the estate by a warranty in his deed would be to impose a new contingent liability upon it and to delay indefinitely the close of the administration.

Was Bishop bound individually? It has been frequently held that an administrator, in contracting with reference to the business of an estate, has bound himself personally for the performance of the contract, though he may, in the body of the instrument, have described himself as administrator or may have signed it as such. Probably in most, if not in all of such cases, he was without power to bind the estate. When the terms of a contract admit of two constructions, one of which would give it effect and the other would make it void, the courts adopt the former construction. But at last it is a mere rule of construction; and it has no place in a case like this, in which the party has stipulated in express terms that he is not to be personally bound. Thayer v. Wendell, 1 Gall., C. C. U. S., 37. The opinion of Judge Story in Thayer v. Wendell, supra, has been cited and the principles there announced applied in the following cases: Mitchell v. Hazen, 4 Connecticut, 514, and Underhill v. Gibson, 2 New Hampshire, 352; though in both cases, there was held to be a personal liability, it not being shown that the party did not intend to bind himself in his individual capacity. See also remarks in Shontz v. Brown, 27 Pennsylvania State, 133, and Long v. Rodman, 58 Indiana, 62, where the proper limitation of the doctrine of personal liability in such cases is announced.

What we have just said applies also to Bishop's oral promise, though we concur with the Court of Civil Appeals in holding that that was merged in the written contract.

We conclude that Bishop was liable neither as administrator nor personally upon either the promise or warranty.

The judgment of the Court of Civil Appeals, in so far as it allows a recovery against Dallas County, is reversed, and judgment is here rendered that the Club Land and Cattle Company take nothing as to its counterclaim against the county; but in all other respects, save as to costs, the judgment of that court is affirmed. The Club Land and Cattle Company will pay the costs of all the courts.

*Reformed and affirmed.*