

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

Gerald C. Mann
XXXXXXXXXXXXXXX
ATTORNEY GENERAL

Hon. T. M. Trimble
 First Assistant
State Superintendent
Austin, Texas

Opinion No. 0-985
Re:  (a)  From what fund, school or
county, should court costs and attor-
ney's fees incident to foreclosure by
county of vendor's lien on county
school lands, be paid.  (b)  From what
fund, school or county, should delin-
quent and current taxes on county
school lands be paid by county owning
same.  (c)  Should the County Schol-
astic Apportionment be first taken
from the County Available School Fund
before other allowable disbursements
are made therefrom.

Dear Sir:

     By your letter of June 13, 1939, you request the opin-
ion of this Department upon the following questions which we
quote from letter to you of date June 12,1939, from the County
School Superintendent of Atascosa County:

     "In 1927 our Commissioners' Court sold a part of our
school lands in LaSalle County, Texas, constituting the
Permanent School Fund of our county.  $5312.91 was paid
in cash and balance of consideration being evidenced by
a vendors lien note for $53,129.16.  The principal of this
note was reduced by payments to $37,500.00 and the interest
at 6% was kept paid up to 1935, when default was made in
further payments and purchasers also allowed taxes to be-
come delinquent.

     "The land has been subdivided and sold to purchasers
in Texas and other states.  Our Commissioners declared the
entire debt due for default and instituted inquiries to
locate the parties so that citation might be served upon
them in suit to foreclose our lien.  This cost amounted to
$200.00.

     "Our Commissioners' Court will shortly make requisi-
tion upon school authorities and the County Board for ap-
proximately $3,000.00 to pay delinquent and current taxes,
also for $750.00 attorneys fees and court costs estimated
at $350.00 to $500.00.

"All payments on the principal have been credited
as made to the Permanent School Fund of our County and
all interest payments as made have been credited to the
County Available Fund.

"Please advise me if it is the duty of the County
School Board and County Superintendent to pay this out
of school funds.  If so, from what fund.  Should we not
take care of the balance of the County Apportionment
which is $0.40 per scholastic before this fund is used
for any other purpose?"

The constitutional and statutory school funds are the
State Permanent School Fund, the State Available School Fund, the
County Permanent School Fund, the County Available School Fund,
Local School Funds derived from maintenance taxes levied by the
various school districts, and School Bond Sinking Funds of the
various districts.

The State Permanent School Fund and the County Permanent
School Fund are constitutional funds, and it is provided expressly
in the pertinent sections of the Texas Constitution  that lands, or
the proceeds thereof, constituting such funds, shall be held in
trust for the public free schools.  With these funds we have no con-
cern because the applicable constitutional and statutory provisions
direct their investment in certain designated bonds, and it is
only the interest therefrom which becomes the State and County
Available School Fund, respectively, subject to annual apportion-
ment for the support of the public free schools.  According to the
leading case of Dallas Co. vs. Club Land and Cattle Co., et al.,
66 S.W.294, it is the gross rather than the net proceeds from the
sale of school lands which should go into the County Permanent
School Fund for investment.  Under this case no part of the cash
proceeds from the sale in 1927 of school lands owned by Atascosa
County in LaSalle County or subsequent principal payments thereon,
constituting the County Permanent School Fund of said County, may
lawfully or constitutionally be diverted for the payment of cur-
rent and delinquent taxes on such lands, or for the payment of
attorney's fees and court costs incident to the pending foreclos-
ure and sale thereof, and the school authorities of Atascosa County
should not draw against the County Permanent School Fund for these
expenditures.

With equal definiteness, can it be said that Local School
Funds derived from maintenance taxes, and Interest and Sinking
Funds derived from bond taxes, levied by the various school dis-
tricts, cannot be called upon to pay any of the costs, expenses or
taxes mentioned in your letter.  These expenses and taxes accrued
in connection with the sale, preservation and protection of school
lands owned by the county in trust for the schools of the county

generally, and maintenance and bond taxes of the various school districts of the county are not levied for any such general purposes or expenditures but rather for specific local purposes. And to pay the expenses and taxes involved in the instant question out of a fund derived from taxes levied to pay interest and create a sinking fund for the purpose of retiring bonds voted by a particular district, would constitute, under all the authorities of this State, an unlawful diversion of such funds.

It but remains to determine whether or not the taxes and expenses involved in your question are chargeable against and payable from the two remaining school funds, to-wit, the State Available School Fund or the County Available School Fund, or if from neither of these, from what funds of the county they might be paid.

The disposition of these two funds is governed by Section 1, Article 2827, Revised Civil Statutes of Texas, which provides as follows:

"The public free school funds shall not be expended except for the following purposes:

"1. The State and county available funds shall be used exclusively for the payment of teachers' and superintendents' salaries, fees for taking the scholastic census, and interest on money borrowed on short time to pay salaries of teachers and superintendents, when these salaries become due before the school funds for the current year become available; provided that no loans for the purpose of payment of teachers shall be paid out of funds other than those for the then current year."

In 1930, Chapter 49, General Laws, 4th Called Session, 41st Legislature, modified the foregoing pre-existing statute upon this subject by providing that from and after August 31, 1930, the salary and office expenses of the county superintendent of public instruction and such assistants as he may have shall be paid out of the school funds of the common and independent school district of the county. It is apparent that with this statute, enlarging the expenditures allowed by Article 2827, Revised Civil Statutes, we have no concern under the facts submitted.

But we are concerned with the provisions of Article 7150a, Vernon's Annotated Civil Statutes, enacted subsequent to said Article 2827, Revised Civil Statutes, and enlarging the scope of same to provide that the County Available School Fund, if such there be, may be used to pay county and district taxes on county school lands. This statute provides as follows:

"Any county in this State owning any land mentioned and referred to in Section 6a of Article VII of the

Constitution of Texas adopted by the people as an amendment to the Constitution under S.J.R. No. 10 of the Regular Session of the 39th Legislature, is hereby authorized to pay taxes duly and lawfully levied on the same out of the County's revenue derived from such land. In the event any County has no such revenue, such taxes shall be paid out of the general fund of the County, and if any County has sufficient of such revenue to pay only a portion of such taxes the remainder shall be paid out of the general fund of the County."

Under the express authorization of the foregoing statute, we advise that the county school authorities of Atascosa County may, in the mode and manner provided by Articles 2693 and 2830, Revised Civil Statutes, draw and approve vouchers against the Available School Fund of said county, if any there be, for the purpose of paying current and delinquent county and district taxes against school land owned by said county in LaSalle County in the approximate amount of $3,000.00, subject however to the limitations and conditions hereinafter discussed.

These conditions and limitations are:  (1)  The only classification of county school lands subject, under the Constitution of Texas, to county and district taxation are "agriculture or grazing school land," and the County Available School Fund cannot be drawn upon, under Article 7150a, Vernon's Annotated Civil Statutes, to pay such taxes accruing against other classifications of school lands, such as timber land. This is by virtue of Article 7, Sec. 6a, Constitution of Texas, which reads as follows:

"All agriculture or grazing school land mentioned in section 6 of this article owned by any county shall be subject to taxation except for State purposes to the same extent as lands privately owned. (Sec. 6a, Art. 7, adopted election November 2, 1926; proclamation January 20, 1927)"

Construing this section of the Constitution, the Court in Childress County vs. Morton Ind. School District, 95 S.W.(2d) 1031, spoke pointedly as follows:

"Under section 6a, supra, of the Constitution school lands belonging to any county are not taxable unless such lands are agricultural or grazing land. Manifestly, therefore, if a county's school lands were classified as timbered lands, they would not be subject to taxation."

It is not made to appear from the facts submitted with your letter whether or not the school land in question is agricultural, grazing or timber land, and we consequently deemed it not

amiss to point out for your guidance the foregoing limitation of tax liability.

(2)   A second limitation or condition upon the right and authority of the county school board to pay current and delinquent county and district taxes against school lands owned by your county, out of the County Available School Fund, under Article 7150a, Vernon's Annotated Civil Statutes, is that the county is not liable for such taxes during the time same was owned by the purchaser thereof in 1927, or until the land shall be reacquired by the county on foreclosure of its vendor's lien; but, of course, the taxes which accrued in this interim would be secured by a lien upon the land which Atascosa County could elect either to discharge by paying taxes or to allow same to be sold for taxes.  This is made plain by the following language of the court in the case of Childress County vs. State, 92 S.W. (2d) 1011:

"It is undisputed from the facts certified that Enochs owned the land in controversy on January 1st of the years 1931, 1932 and 1933.  Enoch's ownership thereof on January 1, 1933, created a liability on his part for the taxes levied upon such property for that year . . .

"When the land reverted to Childress County, it was reacquired subject to the taxes due thereon while it was privately owned.  Therefore, Childress County can protect its interest in the land by paying the taxes due Cochran County for the years 1931 and 1932, or let it be sold for such taxes."

(3) Another limitation or condition upon the application of Article 7150a, Vernon's Annotated Civil Statutes, considered in connection with Sec. 6a, Article 7, Constitution of Texas, is that only that portion of the County Available School Fund which represents rental or other income or revenue from the particular school land involved in your question while same was owned by Atascosa County and not privately owned, can be used for paying the taxes in question.  We rest this conclusion upon Opinion No. O-215, of date February 18, 1939, directed to Honorable Ralph Logan, County Attorney, Tom Green County, wherein the writer made the following well-considered observations:

"This article was intended to cover the kind of situation you have in this case.  In the facts you have stated you say that since October 1, 1935, Tom Green County has received about $24,000 as interest money and lease money from all of its school lands, only a small portion of this being from this particular land.  We believe that only the revenue derived

from the particular land can be used to pay the
County and School District taxes due on this land,
and this belief is because this statute says the
Commissioners' Court shall pay the taxes 'out of
the County's revenue derived from such land.' 'Such
land' means the particular land from which the reve-
nue is derived.

"We also believe that only revenue derived from
this particular land after the State owned the land
can be used to pay these taxes and this belief is be-
cause the statute says 'any county . . . owning any
land mentioned and referred to in Section 6a of Arti-
cle VII. . . is hereby authorized to pay taxes. . .
levieu on the same. . .'. The land must be actually
owned by the State in order for the revenue from it
to be so used, and revenue from the land in the form
of interest on vendor's lien notes derived before
the county regained title to the land could not be
used to pay these taxes. You say that 'during the
latter part of 1937 and the early portion of 1938
this county foreclosed its vendor's lien,' and we as-
sume it obtained title at that time."

(4) Lastly, Article 7150a, Vernon's Annotated Civil
Statutes, authorizing the payment of county and district taxes
upon county school lands out of the County Available School Fund,
is hedged about with the limitation or condition that such pay-
ment may be made only after the annual apportionment of the
County Available School Fund by the county school trustees, act-
ing with the county superintendent, on a pro rata basis accord-
ing to the scholastic population, in accordance with the manda-
tory requirements of Articles 2685 and 2692, Revised Civil Stat-
utes. The County Available School Fund is, under controlling
constitutional and statutory provisions, held in trust to be
applied annually to the support of the public free schools of the
county; and, in our opinion, the annual apportionment of such fund
for the exclusive and direct support of such schools, in the pay-
ment of teachers' and superintendent's salaries, as provided by
Section 1 of Article 2827, Revised Civil Statutes, should not be
disturbed by the permissive right given by a subsequent statute,
to-wit: Article 7150a, Vernon's Annotated Civil Statutes, to pay
county and district taxes on school lands out of the County Avail-
able School Fund or out of the General Fund of the county in the
event there is no Available School Fund. All of these statutes
should be construed harmoniously, if possible, and this allowable
contingent payment of taxes out of the General Fund of the county
is, to our mind, a legislative indication that the County Avail-
able School Fund, to the extent of the annual apportionment there-
of, should be first devoted to the purposes of such apportionment
and not diverted to the payment of taxes on school lands.



of the public free schools of the county; and, in our opinion, the annual apportionment of such fund for the exclusive and direct support of such schools, in the payment of teachers' and superintendents' salaries, as provided by Section 1 of Article 2827, Revised Civil Statutes, should not be disturbed by the permissive right given by a subsequent statute, to-wit: Article 7150a, Vernon's Annotated Civil Statutes, to pay county and district taxes on school lands out of the County Available School Fund or out of the General Fund of the county in the event there is no Available School Fund. All of these statutes should be construed harmoniously, if possible, and this allowable contingent payment of taxes out of the General Fund of the county is, to our mind, a legislative indication that the County Available School Fund, to the extent of the annual apportionment thereof, should be first devoted to the purposes of such apportionment and not diverted to the payment of taxes on school lands.

We come now to consider what particular fund, school, county or otherwise, may be lawfully charged with certain expenses incident to the foreclosure in court by Atascosa County of the vendor's lien which it retained on a sale of its school lands in LaSalle County, namely, attorney's fees in the approximate sum of $750.00 and court costs ranging from $350 to $500. The foregoing discussion is confined to the proper fund from which current and delinquent county and district taxes on school lands may be properly paid. Such taxes rest upon a different basis than do the expenses enumerated above, and we have seen that payment of such taxes, in certain contingencies, out of the County Available School Fund, was allowable only by virtue of an express legislative enactment upon the subject, to-wit, Article 7150a, Vernon's Annotated Civil Statutes, which became effective September 7, 1927. We also pointed out one other instance, an Act of the 41st Legislature in 1930, whereby the Legislature enlarged the allowable expenditures from the public free school fund originally authorized by Section 1 of Article 2827, Revised Civil Statutes. It is patent that attorney's fees and court costs, incident to foreclosure of the county's vendor's lien on school lands, do not, under any tenable construction, come within the scope of the cited statute, originally enacted in 1905, or in subsequent modifications or enlargements thereof in 1927 and 1930, hereinabove fully discussed. And we make the proposition that unless such expenses fall squarely within the authorized expenditures allowed by such statute, Section 1, Article 2827, Revised Civil Statutes, the school authorities of your county would not be authorized to draw or approve vouchers therefor against the public free school fund of the county.

trust, but in many cases they are impressed with a special trust limiting their use to special educational spheres, and in such case, of course, they can be used for no other.' 24 Ruling Case Law, p. 594, § 48."

To the same effect is the case of San Benito Independent School District of Cameron County vs. Farmers State Bank, 78 S.W. (2d) 741, involving an attempted transfer of funds between four separate school accounts, and holding that "it is too well settled to require citation, or any extended discussion, that a public fund selected and allocated for a particular public purpose cannot lawfully be diverted to the use of another particular public purpose."

The case of Dodson vs. Jones, 190 S.W. 253, held that Revised Statutes, 1911, Article 2772 (being now Article 2827, Revised Civil Statutes, above cited by us) providing that the State and county Available School Funds shall be used exclusively for the payment of salaries of teachers and superintendents and fees for taking the scholastic census, etc. and that the surplus of the State fund may be used to pay janitors and other enumerated purposes, does not authorize payments from the Free School Fund to a principal as janitor. Another decision limiting expenditures from the public free school fund of a county to those specifically enumerated by statute is Thompson vs. Elmo Independent School District, 269 S.W. 868.

This fundamental principle of school law has been recognized by successive opinions of this Department. In 1927 an opinion to the then Superintendent of Public Instruction held that funds collected from a lease of county school lands, which is clearly a part of the County Available School Fund, could not be used to fence said lands. In an opinion of date June 17, 1931, addressed to Honorable V. H. McClintock, County Attorney, Cottle County, it was held that the Commissioners' Court was without authority to demand that the county school superintendent issue a voucher on County Available School Funds to pay the proportionate part of the cost of making an audit of the books of county officials. And again on December 7, 1935, in an opinion to Honorable Winfred F. Newsome, it was held that the County Available School Fund could not be used for the purpose of purchasing land at sheriff sales.

Having determined that attorney's fees and court costs incident to the foreclosure of the vendor's lien retained by Atascosa County on the sale of its school lands in 1927, are not payable out of any of the constitutional and statutory school funds named at the outset of this opinion, it appears we have fully answered your questions, because the only issue involved therein was whether or not it was the duty of the county school board and

county superintendent to pay these expenses out of school funds, and if so, from which school funds. But in holding that these items of expenditures were not payable out of any of the specific school funds named and discussed, we did not mean to hold that certain statutory court costs accruing in connection with the foreclosure of the vendor's lien in question would not be payable out of the proceeds in the hands of the sheriff on sale of the land under order of sale. Nor did we mean to hold that such items of expense would not be payable out of the proper funds of the county. Hence to avoid confusion, we shall briefly discuss these two sources of payment.

As regards the payment of the items of expense now under consideration, we point to a distinction between proceeds derived from a sale of county school lands at private sale and proceeds derived from a sale of such county school lands at sheriff's sales, under order of sale, after foreclosure of the county's vendor's lien through court proceedings. In the former instance the Supreme Court of Texas in the case of Dallas County vs. Club Land & Cattle Company, 66 S.W. 294, and the Austin Court of Civil Appeals in the case of Brazoria County vs. Padgitt, et al, 160 S.W. 1170, have held that certain expenses attending a private sale of county school lands such as surveyor's fees, traveling expenses, commissions, incidental charges, etc. are not payable either from the gross proceeds realized from such sale or by a conveyance of a portion of the land, but rather are payable out of the General Fund of the county; and all of the gross proceeds of the sale must be paid into the County Permanent School Fund for investment in the constitutional manner. But in the latter instance, that is to say, where county school land is sold at sheriff's sale upon foreclosure, through court proceedings, of the vendor's lien held by the county, the Supreme Court of Texas in McLennan County vs. Graves, 64 S.W. 861, has held that the funds in the hands of the sheriff by virtue of such sale may lawfully be first applied to payment of costs incurred in its collection, the balance to go into the school funds of the county. In that last case McLennan County made the contention that the statutory commission allowed the sheriff on execution sales and the statutory court costs could not be appropriated out of the moneys or funds realized from such sale, because such moneys belonged to the county school funds; but, grounding its decision upon the general rule that the cost of enforcing a claim has prior right to satisfaction out of money collected in the proceeding, the court allowed the sheriff's commissions and proper court costs to be deducted from the proceeds of the sale, before the transfer of same into the Permanent School Fund of McLennan County.

In regard to the attorney's fees and court costs involved in the instant question, including such statutory court costs as are embraced in the rule announced above, we are of the opinion that such expenses are payable out of the General Fund of Atascosa County.

Several of the opinions of this Department hereinabove referred to, so hold in connection with the expenses therein involved, as well as an opinion of the Department to Hon. J. H. Foster, County Judge, Rains County, of date May 1, 1931. The facts involved in the latter opinion closely parallel those of the instant question in that the expenses sought to be paid from the County Available School Fund were to protect the county's rights in school land which had been sold on time and default made so as to throw the land back on the county.

Assuming that the attorney's fees and court costs described in your letter are otherwise lawfully payable (a question upon which we venture no opinion), we believe a statutory duty rests inferentially but squarely upon Atascosa County to pay such fees and expenses from the General Fund of the county under Article 2826, Revised Civil Statutes, which provides as follows:

"It shall be the duty of the commissioners court to provide for the protection, preservation and disposition of all lands heretofore granted, or that may hereafter be granted to the county for education or schools. (Const., art. 7, sec. 7.)"

Concerning expenses incident to a private sale of county school land but, in principle, applicable to expenses of a foreclosure sale of such lands as involved here, the Supreme Court, in Dallas County vs. Club Land and Cattle Company, supra, well stated the reasons justifying the placing of this burden upon the General Fund of the county:

". . . As to the reason of the provision, it may be urged that, since the county is made a mere trustee, it is unreasonable to suppose that it was intended to charge it in its individual capacity with the expense of administering the trust fund. The answer is that while, in legal contemplation, the county is but a trustee, and the school fund the beneficiary, the county has an important interest in the maintenance of public schools within its limits; and that it is not unreasonable that the framers of the constitution should have deemed it politic to make the expense of administering a fund set apart for the support of public schools in the county a charge upon its general revenues. Since the lands are the gift of the state for the special benefit of the educational interest of the county, it is not a hardwhip to require the county administration to bear the expense of converting the land into money. . ."

Trusting the foregoing adequately answers your several inquiries, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Pat M. Neff, Jr.
Pat M. Neff, Jr., Assistant

APPROVED AUG 15, 1939
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED: OPINION COMMITTEE
BY:      R.W.F., CHAIRMAN

PMN:N:wb