### BEN C. TABER ET AL. v. DALLAS COUNTY.

#### No. 1775. Decided January 8, 1908.

**1.—Trust—County School Land—Sale—Benefit to County.**

The mere fact that a county, by the sale of its school land for a fair price, the sole moving consideration, acquired incidentally, a benefit independent of that enuring to its Free School Fund, in securing from the purchaser the dismissal of a pending suit by him against the county and the assumption of the expenses of a pending suit by the county to get possession of some land, would not alone make the sale voidable as a transaction by which a trustee derived a personal interest. Nabours v. McCord, 97 Texas, 526, distinguished. (P. 248.)

**2.—Same.**

The county being under obligation to bear the expenses of preservation and sale of its school land out of its general revenues, without diverting any part of the School Fund for that purpose, the fact that a part of the consideration for the sale of its school land was the release of a claim for damages against the county by the purchaser and the payment by him of expenses for recovering the land would render void the sale. (Pp. 248, 249.)

**3.—Practice on Appeal—Reversal on Facts.**

The Court of Civil Appeals has power to reverse the findings of the trial judge on the facts, but cannot render judgment on its own findings so made; if, under the evidence, the question was controverted, it must remand for another trial. (Pp. 249, 250.)

**4.—Contract—Mutuality—Right to Terminate.**

A contract, on good consideration, is not rendered void for want of mutuality because by its terms one party has reserved the right to terminate it at his option. (P. 250.)

**5.—Same—Improvements as Consideration.**

A contract by a purchaser of land which gives him the option to terminate the sale, losing the improvements placed on the land by him, is supported by a good consideration after he has made the contemplated improvements. (P. 250.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Archer County.

Dallas County sued Taber and Wilson to recover county school land sold by it to Taber. Defendant had judgment which, on appeal by plaintiff was reversed and rendered in its favor. Taber and Wilson thereupon obtained writ of error.

*K. R. Craig,* for plaintiffs in error.—It appearing from the facts in evidence that the purchaser Taber had no cause of action against the County, and that he had prior to the purchase abandoned any claim thereto that he may have conceived he had, by voluntarily rescinding the lease contract, his release was of no value. And it further appearing from the evidence, and being so found by the court, that the Commissioners' Court treated the release mentioned in the offer of purchase as of no value, and did not compute nor consider the same in estimating the selling price of the land, nor as any inducement to enter into such sale, the said release can not be treated nor held to be, or to have been, any part of the consideration for such sale, or as constituting any part of the proceeds of said land. The proposition with reference to obtaining the possession of said land in so far as it involved the doing of anything other than such as Taber would have been compelled to do without the agreement, appearing from the evidence to have had reference to the attorney's fees and costs in the Brown litigation, and that the amount of said attorneys' fees and costs had been in fact paid into the school fund, all of which facts were found to be true by the conclusions of the trial court no portion of the proceeds of such sale was diverted as the result of such agreement, even if the provision in the contract should be subject to the construction that it was the intention of the Commissioner's Court to divert the same when paid. Haldeman v. Chambers, 19 Texas, 51-52; Culbertson v. Blanchard, 79 Texas, 492; Pendarvis v. Gray, 41 Texas, 326; Philpot v. Gruninger, 14 Wall. (U. S.), 570; 6 Am. & Eng. Ency. L. (2d ed.), 776, 777; 9 Cyc., p. 595e; 24 Am. & Eng. Ency. L. (2d ed.), 647.

That the construction of the contract by the trial court was correct. Taber v. State, 12 Texas Ct. Rep., 363; Morris v. DeWolf, 33 S. W. Rep., 556; 17 Am. & Eng. Ency. L. (2 ed.), 4, 5, 7, 17, 18, 19, 20, 21; 11 Am. & Eng. Ency. L. (1st ed.), 512, 513, 518, 522.

That defendants were and are entitled to the alternative of reformation. Kelley v. Ward, 94 Texas, 296, 297; Gammage v. Moore, 42 Texas, 171; Avery v. Hunton, 23 Texas Civ. App., 356, 357; Harrell v. De Normandie, 26 Texas, 126, 127; 24 Am. & Eng. Ency. L. (2d ed.), 648, 649, 650, 651, 823; 2 Pomeroy Eq. Jur., sections 845, 853, 856, 859, 862, 866.

A valid and apparently adequate consideration in money being offered for the land, it became a question of fact, and not of law, whether the other things embraced in the offer had any value, and were intended to or did in fact add anything of value to the money

consideration offered. The estimate placed upon such things by the parties themselves at the time, and the consideration or treatment of them by the parties at the time of the transaction, is conclusive, especially in the absence of any evidence to the contrary. Haldeman v. Chambers, 19 Texas, 51, 52; Heath v. Coreth, 11 Texas Civ. App., 94; Bailes v. Williams, 15 Texas, 318; Alden v. Thurber, 149 Mass., 271; Howard v. Wilmington & S. R. R. Co., 1 Gill, 321; Curtis v. Littlefield, 90 Mass., 570; De Peyster v. Pulver, 3 Barb. (N. Y.) 284; Battle v. Rochester City Bank, 3 N. Y., 88; Thompson v. Lyons, 54 N. Y. Super. Ct. (22 Jones & S.) 101; Smethurst v. Woolston, 5 W. & S. (Pa.) 106; 2 Warvelle on Vendors (2nd ed.), sec. 827; 9 Cyc. 595; 24 Am. & Eng. Ency. L. (2nd ed.) 647.

*Halton W. Summers,* County Attorney, *Cockrell & Gray* and *James H. Robertson,* for defendant in error.—A sale of County School Land held in trust by a county for public school purposes, for a consideration other than money is invalid, and the county may, at its option, repudiate a sale by its Commissioners' Court when the consideration for the sale is partly money, partly the cost and expense of reducing the land to possession and partly a release to the county for damages incurred by the purchaser as a lessee under a previous contract which the county had not complied with. Tomlinson v. Hopkins County, 57 Texas, 572; Pulliam v. Runnels County, 79 Texas, 363; Cassin v. La Salle County, 21 S. W. Rep., 122; Dallas County v. Club, Land & Cattle Co., 95 Texas, 200; Dallas County v. Club, Land & Cattle Co., 64 S. W. Rep., 872; Waggoner v. Wise County, 43 S. W. Rep., 836; Wegner v. Biering, 65 Texas, 509.

The contract between the Commissioners' Court of Dallas County as executed by the county judge and Taber being unilateral and giving Taber the right to end the contract by failing and refusing for 60 days to comply with his part of it, lacked mutuality, and was therefore not binding on the county and the contract of sale was subject to repudiation at the option of the county. Houston & T. C. Ry. Co. v. Mitchell, 38 Texas, 87; Simkins on Contracts, 240; 1 Parsons on Contracts (5th ed.), 448-9.

The written proposition of Taber for the purchase of the land in controversy and its acceptance by the Commissioners' Court constituted a complete written contract, and since said written proposition offered as part of the consideration for the contract to release the county from damages claimed to have been incurred by Taber by reason of the breach by the county of a former lease contract, such acceptance by the county ipso facto operated as a release of such damages and became a part of the contract and it was not permissible to prove by parol that such agreement for release was no part of the contract. East Line R. R. Co. v. Garrett, 52 Texas, 138; Byars v. Byars, 11 Texas Civ. App., 567; Kahn v. Kahn, 58 S. W. Rep., 824; 94 Texas, 119; Teague v. Teague, 71 S. W. Rep., 555; Willis v. Byars, 2 Texas Civ. App., 136; Weaver v. Gainesville, 1 Texas Civ. App., 288; Loonie v. Tillman, 22 S. W. Rep., 524; 3 Texas Civ. App., 334; Coverdill v. Seymour, 57 S. W. Rep., 637; Boone

v. Mierow, 8 Texas Ct. Rep., 472; Southern H. Bldg. & Loan Assn. v. Winans, 60 S. W. Rep., 826; Gano v. Palo Pinto County, 71 Texas, 101; State v. Paris Ry. Co., 55 Texas, 76; Kerr v. City of Corsicana, 35 S. W. Rep., 694; Stevenson v. Bay City, 26 Mich., 45; Commissioners of Noble County v. Hunt, 33 Ohio St., 169; Bridges v. Supervisors of Clay County, 58 Miss., 817; Mayhew v. Dist. of Gay Head, 95 Mass., 129; Michener v. Lloyd, 16 N. J. Eq., 38; Gilbert v. City of New Haven, 40 Conn., 102; Reppy v. Jefferson County, 47 Mo., 66.

The mere recollection, understanding or conclusion of a member of a Commissioners' Court is not admissible to interpret, vary or collaterally attack an order or record of such court constituting a written contract. Gale Mfg. Co. v. Finklestein, 59 S. W. Rep., 571; Bupp v. O'Connor, 1 Texas Civ. App., 330; Rubrecht v. Powers, 1 Texas Civ. App., 284; Sanborn v. Murphy, 86 Texas, 437; Gano v. Palo Pinto County, 71 Texas, 101; Commissioners of Noble County v. Hunt, 33 Ohio St., 169; Stevenson v. Bay City, 26 Mich., 44.

When a county has made a lease contract and collected lease money for her public school lands and then is unable to perform its part of the lease contract and put the lessee in possession, and the lessee asserts his loss or damages by reason of breach of contract, and in the adjustment of the differences between the county and lessee a contract for the sale of the land to the lessee at its reasonable price is entered into and it is agreed that the money theretofore paid by the lessee on his lease contract shall be credited on the purchase money contract, such agreement is illegal and void and its effect is to divert a portion of the proceeds of the sale to settlement of damages. Hedges v. Dixon County, 150 U. S., 183; Pulliam v. Runnels County, 79 Texas, 363; Tomlinson v. Hopkins County, 57 Texas, 572; Dallas County v. Club Land & Cattle Co., 95 Texas, 200; Cassin v. La Salle County, 1 Texas Civ. App., 130; Edwards County v. Jennings, 89 Texas, 620; Goodman v. McGehee, 31 Texas, 255; Kottwitz v. Alexander, 34 Texas, 708; Fuqua v. Pabst Brewing Co., 90 Texas, 302; Sanger v. Miller, 62 S. W. Rep., 425; Reed v. Brewer, 90 Texas, 149.

Evidence of the understandings or agreements of individual members of a Commissioners' Court which are in no manner shown by minute entries is incompetent to bind the county. Brown v. Reese, 67 Texas, 318; Polly v. Hopkins, 74 Texas, 145; Gano v. Palo Pinto Co., 71 Texas, 101; Commissioners of Noble County v. Hunt, 33 Ohio St., 169; Stevenson v. Bay City, 26 Mich., 45.

Mr. Justice Brown delivered the opinion of the court.

The State granted to Dallas County three leagues of land in Archer County for free school purposes. Dallas County leased the land to one Carver. Upon the expiration of his lease the county leased the land to Ben C. Taber for the term of ten years, but Carver refused to surrender possession of the land, and, after several months effort to get possession, Taber brought a suit against Dallas County for damages caused by the failure to give him possession.

Dallas County· had conveyed 711 acres of the three leagues of land to John Henry Brown as compensation for having the school lands· surveyed, and .that land· had been conveyed to the Club Land & Cattle Company.   A suit was· then pending in the District Court of Archer County by Dallas County against the Club Land & Cattle Company for recovery of the 711 acres of land.   When the suit by Taber against the county for damages had been pending for some time, Taber submitted to the Commissioners' Court of Dallas County this proposition: "Friday, Nov. 23, 1900.   To the Honorable Commissioners' Court, Dallas County, State of Texas.   Gentlemen:

"In view of the prospects of our not getting an early and final decision from the courts and· possession of the Dallas County School Land, which you leased to me Sept. 10th, 1899, and prompted by a desire to settle the matter without further loss to myself and the county, I will submit to you the following proposition.          :

"I will agree to purchase the land at $2.00 per acre on contract for deed on or before twenty years from January 1st, 1901, will pay interest at the rate of (3½) three and one-half per cent per annum payable semi-annually in *advance,* I will further agree to obtain possession at my own expense of all the land, and will release the county from the damages I have sustained by reason · of their inability to comply with ·the terms of our contract.

"No deed to be made until the entire amount of principal and interest has been fully paid, and all money that I have heretofore paid to be credited on the interest account.

"In making you the above proposition I desire to call your attention to the fact that you stop all further loss to the County School Fund and damages to me, also that the income is larger than you can realize by the sale of this land for cash as you must invest the principal in· direct competition with the State School Fund, which now has over one million dollars of idle money at three per cent. and with every prospect of it being lower in the near future. Yours respectfully, Ben C. Taber."

After due consideration of the matter, the Commissioners' Court entered the following order: "It is ordered by the court that the proposition of Ben C. Taber for the purchase of the Dallas County School land situated in Archer County be and the same is hereby accepted, and it is further ordered by the court, that the county judge be authorized and directed in behalf of Dallas County, to sign a contract in compliance with said proposition."

In pursuance of that order the County Judge of Dallas County executed the following contract with Ben C. Taber:

"State of Texas,   ⎱
County of Dallas. ⎰
Know all Men by these Presents:
That this contract of sale made and entered into this the 23rd day of November, A. D. 1900, by and between the County of Dallas, State of Texas, acting by and through her county judge, Kenneth Foree, and by virtue of an order of the Commissioners' Court of said Dallas County, made at a special term of said court held at

Dallas, Texas, on the 23rd day of November, A. D. 1900, herein-
after styled party of the first part, and Ben C. Taber of Dallas
County, State of Texas, hereinafter styled party of the second part,
Witnesseth:

That for the consideration hereinafter named, the party of the
first part by the terms hereof, contracts the sale of the lands belong-
ing to the School Fund of said Dallas County to the party of the
second part. Said lands are situated in Archer County, State of
Texas, and known and described as follows: . . . for the sum
of $24,568.00, same to be paid on or before twenty (20) years after
date of this contract with interest at the rate of 3½% per annum,
payable semi-annually in advance on or before the first day of Jan-
uary, 1901, in the sum of $429.94, on or before the 1st day of July,
1901, in the sum of $429.94 and the same amount on or before each
succeeding January and July thereafter. Said interest shall be paid
in full on dates aforesaid unless the party of the second part has
paid part of said principal as herein contracted, in which event
3½% shall be calculated upon the amount remaining unpaid. The
party of the first part agrees to accept any part of said principal
in the sum of $1,000.00, or multiples thereof, at any interest paying
date named in this contract. And it is specially provided that
should the said party of the second part, or his legal heirs or as-
signs fail or refuse for sixty days after any one of the semi-annual
interest payments become due, to pay the same, then this obligation
to become null and void and of no binding effect on either party
hereto, and in that event all the appurtenances and improvements
situated thereon shall become the property of the said Dallas County
or her legal assigns, and the party of the second part hereby agrees
and binds himself, his heirs and assigns to quit and surrender said
premises, together with all the appurtenances and improvements
thereon situated, and the party of the first part may re-enter and
take possession of said premises, and hold as in her former estate,
and thereupon this contract of sale, and everything herein con-
tained, shall cease and shall become null and void, and all claim
for damages by reason of such re-entry is hereby expressly waived
and the party of the first part shall have no right hereunder for
a specific performance hereof. . . . It is further agreed and
understood that the party of the second part is to pay all court
costs and attorneys' fees incurred in the suit now pending to recover
the 711 acres, and in the event of recovery the amount of $1,411.00
to be added to the amount of principal heretofore named in this
contract and to pay interest on same at the rate of 3½ per cent.
per annum from date of recovery."

Taber went into possession of the land and sold a half interest to
J. B. Wilson. Dallas County filed a suit against Taber and Wilson in
the District Court of Dallas County for recovery of this land,
which was dismissed upon a plea of privilege. Subsequently, this
suit was filed in the District Court of Archer County, in the name
of Dallas County, for the benefit of the public free school fund,
to recover the land and for the value of the use of it during the
time that Taber had been in possession. The case was tried in the

District Court before the Honorable A. H. Corrigan, district judge, who filed conclusions of fact which we summarize in part and copy in part as follows:

Taber paid promptly the instalments of interest as they became due, and before the institution of this suit paid to the county clerk of Dallas County the sum of $362.80 and interest from the date that the county paid the same in settlement of the agreement to pay the costs and attorney's fees in the case against the Club Land & Cattle Company.

Both Taber and the County Commissioners had been advised before the making of the contract that the claim of Taber against the county for damages on account of the failure to deliver possession of the land under the lease was without merit and that Taber could not recover anything from the county, and in making the sale of the land to Taber the release of the claim for damages was not considered as any part of the consideration. The agreement of Taber to recover possession of the land at his own expense referred to the 711 acres which was then in controversy in the court, and the expense contemplated was the payment of the attorney's fees and the costs of court in the suit against the Club Land and Cattle Company, then pending. At the time of the sale to Taber there was doubt as to how many acres were contained in the tract but it was estimated at 12,284 acres, exclusive of the 711 acres in controversy with the Club Land & Cattle Company, and it was agreed that when the land was surveyed any excess that was found over the estimated amount should be included at the same price under the contract, and that when the 711 acres should be recovered by the county it should be embraced upon the same terms, and Taber had the land surveyed out in order to ascertain the boundaries and quantity.

We copy the following findings of the trial court:

"(8)  I find that the purchase price at which the land was sold, viz.: Two dollars per acre, was the fair market value of the land at that time. And that the terms of sale and rate of interest were fair and reasonable at that time.

"(9)  I find that there was no fraud practiced on the Commissioners Court by Taber, and there was no collusion between them and Taber. That neither party had any intent to divert any part of the consideration from the school fund, and that no part has been diverted.

"(10)  I find that defendants have made the semi-annual interest payments provided in the contract as they matured, and no default in that respect has ever been claimed by the county.

"(11)  I find that the purpose of Taber in making the purchase of the land, was to convert it into a stock ranch for breeding and raising cattle and other stock thereon. That the Commissioners Court was informed of that purpose at the time and. were also informed that it would require the expenditure of large sums of money in fitting the land for that purpose.

"(12)  I find that the rental or lease value of the land in 1900, was about six cents per acre. That Dallas County had been for

several years prior thereto receiving six cents per acre, and the abandoned lease to Taber was for 6⅛ cents per acre.

"(13) I find that the present lease or rental value of the land without the improvements, is 10 cents per acre, and with the improvements is 15 cents per acre. That the present market value of the land without the improvements is $4.00 per acre, and with the improvements is $6.00 per acre."

If we give effect to the finding of the trial court that two dollars per acre was the fair market value of the land at the time Taber made the purchase and that the Commissioners' Court agreed to sell it to Taber for that price, then the best statement which can be made for Dallas County is: (1) Taber had a claim for damages on the breach of his contract for the lease of the land and for the return of money which he advanced for rent of the land for one year, for which claim the county was legally liable. (2) That Dallas County was legally liable for the costs and attorney's fees in the case against the Club Land & Cattle Company, a suit then pending for the recovery of a portion of the land sold. (3) That the possession of the land was in dispute, being adversely held by one Carver. (4) That in addition to paying the fair market value for the land, two dollars per acre, Taber agreed to and did release the county from liability for his claim for damages, and agreed to and did pay the costs and attorney's fees in the Club Land & Cattle Company case. Taber also undertook to get possession of the land at his own cost. The judge before whom the case was tried in the District Court found that those items constituted no part of the price of the land, still it is apparent that Dallas County derived a benefit to itself by the sale to Taber, and if it were a case of an individual acting as trustee, that fact would make the sale voidable. Nabours v. McCord, 97 Texas, 526.

In the case cited above this court held that, where a trustee in the disposition of property in his hands so contracted as to derive to himself a benefit from the transaction, a court would not inquire as to whether there was injury to the beneficiary or benefits to the trustee. The self-interest of the trustee rendered the transaction voidable at the election of the beneficiary. We think that rule does not apply in this case, for the reason that the same officials represented the county as a municipal corporation and as trustee for the Free School Fund; the county owned the land and the people were alike interested in the preservation of the school fund intact and in protecting the county from an indebtedness which must be paid by taxation. The officers, the members of the Commissioners Court of Dallas County, had no personal interest to serve in the transaction, and it is simply a question whether in performing the act of sale to Taber they have violated the law by diverting a part of the school fund to the payment of the indebtedness of the county.

The Constitution and the statute imposed the trust upon the county and imposed the duty of making sale of the lands upon the Commissioners' Court, and, by imposing that duty, it required the Commissioners' Court to preserve the gross proceeds of the land to be held "alone as a trust for the benefit of public schools" of the

county. (Dallas County v. Club Land & Cattle Co., 66 S. W. Rep., 294; Const., 1786, art. 7, sec. 6.) In the case cited Chief Justice Gaines said: "But, in any event, the word 'proceeds' in the section we are considering, is not restricted by any other words which qualify its meaning, and should, therefore, be applied in its broadest sense, unless the context or the reason of the provision should show that it was used in a less enlarged sense. The dim light of the context in this case tends rather to show that it was intended to mean the gross proceeds; that is, the entire purchase money. As to the reason of the provision, it may be urged that, since the county is made a mere trustee, it is unreasonable to suppose that it was intended to charge it in its individual capacity with the expense of administering the trust fund. The answer is that while, in legal contemplation, the county is but a trustee, and the school fund the beneficiary, the county has an important interest in the maintenance of public schools within its limits; and that it is not unreasonable that the framers of the Constitution should have deemed it politic to make the expense of administering a fund set apart for the support of public schools in the county a charge upon its general revenues. Since the lands are the gift of the State for the special benefit of the educational interests of the county, it is not a hardship to require the county administration to bear the expense of converting the land into money." In support of this cogent reasoning, we call attention to the use of the word "alone" in the Constitution by which the proceeds of the land is devoted exclusively to the trust for the schools. Therefore, it becomes material to inquire whether or not the two dollars per acre, which Taber agreed to pay for the land, constituted the whole price. If, in fact, the release from damages to the county or the payment of the costs and attorney's fees in the Club Land & Cattle Company case, either or both, took a part of the proceeds of the land from the School Fund and appropriated it to the satisfaction of the municipal indebtedness or liability of the county, then it was a violation of the provisions of the Constitution and would render the contract void. If, however, the school fund lost nothing, the fact that Taber released his claim for damages and paid the costs and attorney's fees in addition will not affect the validity of the contract. The Commissioners' Court were authorized to sell the land and they had the right to sell for what the land was worth in the market in its then condition, and if, without fraud, they sold the land to Taber for two dollars per acre, the fact that Taber undertook to recover possession at his own expense would not invalidate the transaction. If it should be found now that the land was in fact then worth more it would not avoid the sale fairly made.

The Honorable Court of Civil Appeals found that the release of damages and the payment of the costs and attorney's fees constituted a part of the purchase price of the land. This was contrary to the finding of the trial court on that question; but the Court of Civil Appeals had authority to reject the finding of the trial court upon the question and to find the fact differently from the finding of the Honorable District Judge, but, there being a conflict in the evidence,

the Court of Civil Appeals could not enter a judgment in favor of Dallas County. It will, therefore, be necessary to reverse the judgment of the Court of Civil Appeals and remand the case for another trial.

Counsel for the county claim that the contract with Taber is void for want of mutuality. The promise to convey the land to Taber upon the payment of the specified sum and interest and Taber's promise to pay the agreed price are mutual promises, the one a valuable consideration for the other, and mutuality is thereby created. (Cherry v. Smith, 3 Humph., 19; 9 Cyc., 333, par. V, note 35.) But it is said that by the terms of the contract Taber could terminate it at his option by failing to pay interest for sixty days, hence his promise to pay is not a valuable consideration. We are not prepared to hold that Taber could terminate the contract by refusing to pay the interest, the question is not before us, but, admitting that to be a correct interpretation of the terms used, it does not destroy the mutuality of the contract, but is simply an option which the parties contracted for and which may or may not be exercised by Taber. (9 Cyc. 333; Waterman v. Waterman, 27 Fed. Rep., 829; Storm v. U. S., 94 U. S., 76.)

Again, by the terms of the contract, Taber agreed that should Dallas County demand possesson of the land upon his failure to pay the interest for sixty days he would surrender the possession of the land, forfeiting to the county all improvements made thereon. Improvements could not be surrendered unless they should be placed on the land by Taber (it was unimproved), therefore the agreement to surrender improvements implied that Taber would place them on the land. (Ferguson v. Getzendaner, 11 Texas Ct. Rep., 710.) Taber having made improvements upon the land to the value of about twenty-five thousand dollars and paid interest for a number of years, Dallas County can not assert that there was want of mutuality in the contract, because the performance by one party of that upon which the mutuality depended relates back and makes the contract good from the beginning. (9 Cyc., VI, p. 334; Waterman v. Waterman, 27 Fed. Rep., 829.)

The Court of Civil Appeals erred in entering judgment in this case against Taber for the land, for which error the judgment of that court is reversed and the cause is remanded to the District Court.

*Reversed and remanded.*