THOMASON et al. v. UPSHUR COUNTY.
(No. 940.)

(Court of Civil Appeals of Texas. El Paso.
April 3, 1919. Rehearing Denied
April 24, 1919.)

1. MINES AND MINERALS ⊜⇒55(4)—CONVEY-
ANCE OF MINERALS IN PLACE—INTEREST IN
LAND.

A contract conveying minerals therein nam-
ed, in place, is in its nature a conveyance of an
interest in the land described; such minerals
being a part of the realty.

2. PUBLIC LANDS ⊜⇒173(14)—CONVEYANCE
OF MINERALS IN SCHOOL LAND—CONSIDER-
ATION OTHER THAN MONEY — VALIDITY OF
CONTRACT.

A contract for conveyance of minerals, in
place, construed as an attempt to convey an in-
terest in public school lands for a consideration,
in part at least, other than money, thereby di-
verting a part of the fund from the purpose to
which it was dedicated, so that the conveyance
is void.

3. PUBLIC LANDS ⊜⇒173(14) — SALE OF
SCHOOL LAND BY COUNTY—DEDICATION OF
STREETS AND ALLEYS WITHOUT MONEY
CONSIDERATION.

That portion of a contract, by which a
county conveyed minerals in certain school
lands which required the county to make a dedi-
cation deed to streets and alleys and to convey
odd-numbered blocks to grantees without con-
sideration to be paid in money, is void.

4. PUBLIC LANDS ⊜⇒173(14)—CONTRACT FOR
SALE OF INTEREST IN SCHOOL LANDS—VA-
LIDITY—PARTIAL INVALIDITY.

Where certain features or provisions of an
instrument conveying an interest in school lands
without a money consideration are void and are
inseparably connected with valid provisions, the
entire contract is tainted and must fall.

5. PUBLIC LANDS ⊜⇒173(14)—CONTRACT FOR
SALE—INTEREST IN SCHOOL LANDS — VA-
LIDITY—CONSIDERATION.

Where a county's contract for conveyance
of an interest in school lands is entire as to
consideration and incapable of severance the
consideration must be wholly good or wholly
bad, and, where a part of it was bad as not
being in money as required by law, the remain-
der, being in money, is insufficient to give the
contract validity.

6. PUBLIC LANDS ⊜⇒173(14)—SCHOOL FUNDS
—LAND—CONVEYANCE — VALIDITY — NOM-
INAL CONSIDERATION.

If a contract for conveyance of school land
be considered severable as to consideration, it
is void, since the commissioners' court, oc-
cupying the relationship of a trustee, could not,
for the nominal consideration of $5, convey a
valuable estate in land belonging to the school
fund.

7. PUBLIC LANDS ⊜⇒173(14) — CONVEYANCE
OF SCHOOL LANDS — INVALID CONTRACT—
POWER OF COURTS TO MAKE CONTRACT.

Where a contract for conveyance of an in-
terest in school lands provides that if it is in-
valid the county as grantor and grantee shall
make a legal and binding agreement to carry
out its terms, the court cannot enforce a trans-
fer by prescribing the price and terms of pay-
ment, which is a matter for the commissioners'
court.

8. ESTOPPEL ⊜⇒62(6)—EQUITABLE ESTOPPEL
—INVALIDITY OF CONTRACT.

Where a county made an invalid contract
for conveyance of a valuable interest in school
lands which it held in trust and permitted
grantees to incur large expenditures upon such
land, the county is not estopped thereby to al-
lege the invalidity of the contract.

Harper, C. J., dissenting.

Appeal from District Court, Throckmorton
County; Jno. B. Thomas, Judge.

Suit by Upshur County against G. W.
Thomason and others. Judgment for plain-
tiff, and defendants appeal. Judgment af-
firmed.

G. W. Thomason, H. G. McConnell, and T.
J. Wright, all of Haskell, and A. H. Carri-
gan, of Wichita Falls, for appellants.

Simpson, Lasseter & Gentry, of Tyler,
and Jo. A. P. Dickson, of Seymour, for ap-
pellee.

## Statement of Case.

HIGGINS, J. Appellee brought this suit
to cancel and annul the contract hereinafter
indicated, to remove cloud from title cast
thereby, and for injunction. The case was
tried without a jury and judgment rendered
as sought. The material facts found by the
trial court may be summarized as follows:

The commissioners' court of Upshur coun-
ty entered into a contract with appellants
as follows:

"The State of Texas, County of Upshur.

"Know all men by these presents: That this
agreement and contract made and entered into
by and between Upshur county, acting by and
through its duly elected, qualified and acting
county judge and commissioners by virtue of an
order of said commissioners' court duly made
on the 27th day of November, 1911, and en-
tered of record in the record of said court, par-
ty of the first part, lessor, of the county of Up-
shur, and state of Texas, for and in considera-
tion of the sum of $5.00, cash to said county
paid by G. W. Thomason, Y. L. Thomason and
G. J. Thomason, parties of the second part,.
lessees, the receipt whereof is duly acknowl-
edged, and other valuable considerations and
the further considerations hereinafter mention-
ed, do hereby devise and grant unto the said G.
W. Thomason, Y. L. Thomason and G. J.
Thomason, of the county of Haskell, and state
of Texas, lessees, all of the following described
minerals, mineral solutions and liquids, to wit,

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

oil, gas, coal, iron, sulphur, lignite, asphaltum, lead zinc, gold, silver, mica, kaolin, baryta, acum, ochre, clays, artesian and mineral water in and under the following described land, together with the right of ingress and egress over same, and the use of so much of the surface thereof as is necessary for the purpose of mining, drilling for, operating for, exploiting and removing any or all of the above described substances, and the right to erect and place tanks thereon, pipe lines, refineries, mills, machinery and appurtenances and buildings to fully carry on the said work and to construct and operate railroads upon and over said land, and right of way for same and dirt roads, together with the privilege to remove at any time all such that have been placed thereon by the second parties, with the right to use water, gas, oil, coal, lignite, and timber without further charge to operate said property.

"The land above referred to is described as follows: Lying in the counties of Throckmorton and Baylor, and state of Texas, and being 17,712 acres of land more or less, being the same land conveyed or patented to Upshur county by the state of Texas, by patent Nos., to wit:

"First. Two leagues of land granted to the commissioners' court of Upshur county by patent No. 494, Vol. 11, dated July 15, 1856, being abstract No. 825, and to which patent and the record thereof in the General Land Office in Austin, Texas, reference is here made and said record is made a part hereof for full description of said land, including field notes.

"Second. Two leagues of land situated in Baylor and Throckmorton counties, granted by the state of Texas, to the commissioners' court of Upshur county by patent No. 722, Vol. 12, being abstract No. 567, and to which patent and the record thereof in the General Land Office in Austin, Texas, reference is here made, for further description and field notes and said record is made a part hereof for full description of said land. Said four leagues of land being known as Upshur county school land and located in Throckmorton and Baylor counties.

"To have and to hold all and singular the hereinbefore named substances unto the said parties of the second part, their heirs, executors, administrators, successors or assigns forever upon the following conditions and provisions, to wit:

"Whereas, there have been rendered certain decisions by court of last resort, which have been deemed to interpose difficulties in the way of procuring the development and exploitation of mineral resources of land, and whereas, the parties hereto have no definite knowledge that any of the hereinbefore named mineral substances exist in or under the said land in paying quantities, and whereas, the country surrounding the aforesaid premises is largely undeveloped, and, whereas, a large amount of time and money will be requisite for the development here contemplated, therefore conformably to such decisions, conditions and facts it is agreed:

"That a reasonable time should be had and allowed therefor and that the term of one and one-half years is such reasonable time. It is accordingly provided and agreed that the second parties shall commence in good faith the work of developing and operating for the above-named substances, or any of them on said land

within said time from date of their possession. If they should fail for any reason to so begin work within said time, they shall become absolutely liable to pay to the first party as a further consideration until operations are begun the sum of ten cents per acre on all said land at the end of each year thereafter until work is begun. But in no event shall this grant run for longer than five years from date of possession of said land by said second parties unless some of the substances named are being produced in paying quantities. In case gas alone is found in paying quantities the party of the first part shall be paid $150.00 per year for the products of each well used so long as the same is conveyed and sold commercially off the premises or used on the premises for manufacturing purposes.

"Should oil be found in paying quantities, the second parties hereby agree to pay first party the market value of same at the well or wells, as follows: From all wells producing one thousand barrels or over of oil per day, 12½ per cent. of so much thereof as may be sold and delivered; and from all wells producing less than 1,000 barrels per day 8 per cent. of so much thereof as may be sold and delivered, a day as here used means 24 hours. If convenient said portion of oil may instead be delivered into pipe lines for account of first party.

"If any of the substances named in this instrument not otherwise provided for are discovered in paying quantities, the first party shall be paid 4 per cent. of the proceeds thereof received at the mouth the mine.

"It is understood that the payments herein provided to be made in the event of the discovery of any of the substances named are to be so made as full compensation for the use of the surface, timber, water, coal and for mining and drilling underneath the surface of the land herein described.

"All settlements shall be made quarterly.

"In case second parties desire land for mining camp and town site, said second parties shall have the right to select for such purpose, at such time as they desire, 1,000 acres out of the land herein described, and at such place as they may desire, provided said 1,000 acres be in one body, and as near as possible in a square. Said second parties shall plot or cause same to be plotted at their own expense, in blocks and lots with needed streets and alleys, suitable for town site; and the blocks are to be numbered numerically and consecutively, beginning with No. one. The first party, when said land has been so selected and plotted shall make necessary dedication deed, dedicating said streets and alleys to public use, and first party shall furnish abstract of title showing good title in it to said land, and shall by proper conveyance, at said time, convey one-half of said blocks to second party. This is, the said first party shall convey to second party all blocks with odd numbers, the first party retaining the blocks with even numbers.

"In case artesian water is found and second parties intend to abandon wells, first party shall have the privilege of purchasing same at cost, provided they do so within 30 days after being served with written notice.

"Whenever the first party shall request it, second parties shall bury all oil and gas line pipes.

"In case the second parties should bore wells and discover water only in them other than mineral and artesian and desire to abandon same, party of the first part is to have the right to pay parties of the second part for the casing in said wells and the party of the first part is to have the casing in said wells.

"Whereas the lands described in this lease are now leased for a term of years to parties for grazing purposes and it is not known whether parties of the second part can obtain from parties now leasing, and in possession, permission of ingress and egress to and from said land to carry out the terms of .this lease as is provided on their part, it is agreed by the parties hereto that the parties of the second part are to have eighteen months from the time they obtain possession of said lands to begin work in and the five years mentioned herein for this lease term to run is to be from the time parties of the second part obtain possession of said lands to carry out their part of this lease.

"In case the lands described herein are sold or released during the life of this contract, the parties of the second part are to have a 60-day preferred option to purchase or lease said lands on such price, terms and conditions as may be prescribed by the commissioners' court of Upshur county at the time of sale or re-lease of said lands.

"In case this lease or any clause therein should not for any cause be binding and effectual on either party, then and in that event each of the parties hereto agrees and binds themselves to make and enter into such contracts and writings as will be legal and binding to carry the terms of this lease into effect.

"This grant and all rights hereunder, shall run and be perpetual as long after the terms mentioned as any of the substances herein named are operated for and the consideration as herein provided is fully paid for same.

"Any payments, may be made by money order or check on nearest ·or some convenient bank mailed to the county judge of Upshur county, Gilmer, Texas.

"It is provided that all conditions and provisions in this instrument between the parties hereto shall extend to their heirs, executors, administrators, successors or assigns, who shall be absolutely substituted to said original parties hereto or either of them.

"In witness whereof we have hereunto set our hands; that is to say the first party by its duly constituted officers hereinbefore stated, this the 27th day of November, 1911.

     "W. A. Phillips, Co. Judge.
     "J. M. Todd, Comr. P. 1.
     "L. J. Dalrymple, Com. No. 2.
     "A. Earp, Com. 3.
     "L. A. Shrum, Com. No. 4."

The lands described in the contract were county school land granted to Upshur ·county under the Constitution of 1876, for the benefit of the public schools. Appellants went into possession of the land and have invested considerable money in carrying out the ·obligations resting upon them under the contract.

Defendants answered by general denial and special answer, to which a general demurrer was sustained. No point is made as to the sustaining of the demurrer to the general denial. The demurrer was evidently intended as applying to the special answer, and by the parties is so treated. At any rate, the case was tried upon its merits as if the general denial had not been stricken out, and the case is presented here upon the theory that the demurrer was sustained only to the special answer. Under the views hereinafter indicated, the special answer presented no defense, and the sustaining of the demurrer thereto presents no error.

## Opinion.

[1] 1. The contract in question is a conveyance to appellants of the minerals therein named, in place. This being its nature, it is a conveyance of an interest in the land described in the contract; such minerals being a part of the realty. Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989; Staley v. Derden, 57 Tex. Civ. App. 142, 121 S. W. 1136.

[2] 2. The question thus arises as to the validity of the conveyance.

In Dallas County v. Club L. & C. Co., 95 Tex. 200, 66 S. W. 294, the commissioners' court of Dallas county entered into a contract with one Brown, whereby Brown was to survey, subdivide, map, and classify for the purpose of sale the school lands of the county, and the county agreed to pay him for the work $250 in money and to convey to him a portion of the land. Brown complied with the contract, and the commissioners' court of Dallas county paid him the money consideration and caused to be conveyed to him a portion of the school land as agreed. The suit was by Dallas county against a remote vendee of Brown to recover the land. The question presented was the power of the commissioners' court "to convey a part of the land already located in payment for services in subdividing them for the purpose of placing them upon the market for sale in separate parcels." The opinion is quite lengthy, and we will not undertake to quote it; ·but it was in effect held that the policy of our legislation has been to preserve the entire county school lands and their entire proceeds as a permanent school fund for the use of the public schools of the county, that a conveyance of the land for any consideration other than money was unauthorized, that no part of the land could be given for the expense of locating and surveying same, and that the commissioners' court of Dallas county did not have the power to convey the land in controversy to Brown in payment for his services in subdividing the lands for sale. In this connection, see also, Taber v. Dallas County, 101 Tex. 241, 106 S. W. 332; Pulliam v. Runnels Co., 79 Tex. 363, 15 S. W. 277; Tomlinson v. Hopkins County, 57 Tex. 572.

The contract between the commissioners'

court of Upshur county and appellants is a conveyance by the county to the latter of the minerals, etc., the same being a part of the land itself; also, the conveyance of valuable easements by way of surface rights and granting other rights and privileges. As we construe the contract, this conveyance was for a consideration of $5 paid, the development by the Thomasons of the mineral resources of the land, and the payment to the county of a certain per centum of the value of such of the mineral resources as might be developed. On its final analysis, the Thomasons received the major portion of the developed minerals for no other consideration than that stated above. The practical effect of the contract is to divide the mineral resources between the Thomasons and the county, in consideration of the development of the same by the latter. It cannot be denied that the surface easements granted by the contract constitute an estate in the land. Aside from the $5 paid in cash, the consideration for the same is the development of another interest in the land, namely, the minerals, and after such development the payment of the value of a per centum of such minerals. We regard the contract as an attempt to convey an interest in the land for a consideration, in part at least, for other than money, thereby diverting a part of the fund from the purpose to which it was dedicated, and that for this reason the conveyance is void under the authorities cited above.

[3, 4] 3. That portion of the contract requiring the county to make dedication deed to streets and alleys and convey odd-numbered blocks to appellants requires the county to so do without any consideration to be paid in money, and for the reason indicated above is void. This provision is, however, severable, and of itself probably would not invalidate the entire contract. In this connection, it may be remarked that possibly some features of the contract are not invalid: but, if so, they are so inseparably connected with the invalid provisions that the entire contract is tainted and must fall.

[5, 6] 4. But it is insisted that the $5 paid in cash to the county was sufficient consideration to support the contract. This cannot be sustained. Where the consideration is entire and incapable of severance, then it must be wholly good or wholly bad. Parsons on Contracts (6th Ed.) 455, 456. The contract here considered is entire as to consideration, and the vice noted taints the whole. Midland Co. v. Slaughter, 61 Tex. Civ. App. 328, 130 S. W. 612. Furthermore, if the consideration were severable, we do not believe that the commissioners' court, occupying, as it did, the relationship of a trustee, could for a nominal consideration convey a valuable estate in land belonging to the school fund.

[7] 5. The contract contains this provision:

"In case this lease, or any clause therein, should not for any cause be binding and effectual on either party, then and in that event, each of the parties hereto agree and bind themselves to make and enter into such contracts and writings as will be legal and binding to carry the terms of this lease into effect."

In this connection appellants submit this proposition:

"Where the parties to a contract or instrument bind and obligate themselves to make and enter into such contracts and writing as will be binding and legal to carry the terms of same into effect, in the event said contract or instrument or any clause therein should not for any cause be binding and effectual on either party, the court, in such event, should by its judgment and mandatory orders compel the parties thereto to do so."

The courts can enforce contracts, but they have no authority to make same for parties. Effect could not be given to that portion of the contract here invoked without undertaking to prescribe the price and terms of payment. That is a matter which rests with the commissioners' court of Upshur county. Upshur county cannot be compelled to enter into a valid contract with appellants unless its commissioners' court sees fit to do so.

[8] 6. Appellants pleaded:

"That if defendants have not proceeded in strict accordance with the terms or provisions of said contract, which is not admitted but denied, plaintiff has with knowledge of the terms or provisions of said contract and of the work being done by defendants under said contract and the manner and method thereof, have sat idly by without complaint and permitted defendants to expend large sums of money, to wit, some $75,000, in exploring for said minerals in and under said land and developing and improving the same in pursuit of the rights conferred or attempted to be conferred upon them by the terms of said contract, and have not protested against the same nor requested or demanded that defendants proceed in any other manner nor denied to the defendants their right to so proceed and have continued this conduct for more than four years, the plaintiff thereby has waived its right to a recovery under any of the allegations of its petition."

In our opinion this presents no issue of estoppel against Upshur county. Title to land held by it in trust for the schools could not be divested by the facts pleaded. Appellants, equally with Upshur county, were charged with knowledge of the illegality of the contract under which they were operating.

Finding no reversible error, the judgment is affirmed.

HARPER, C. J. (dissenting). I cannot agree with the majority opinion that this contract is void when tested by the rules which govern in its construction; i. e., construing

the writing as a whole in the light of the surrounding circumstances, and giving effect to every part, that the whole may stand if possible and in favor of its validity. Stone v. Robinson, 180 S. W. 135.

It is: First, a lease upon condition subsequent, in this, it is recited that the lands then being leased for a term of years, and it not being known whether the parties of the first part could obtain possession, the grantees are given 18 months in which to obtain possession, and 18 months after getting possession in which, in good faith, to begin operations leading to a discovery of the substances named; and, should they fail to begin work within said time, they are bound to pay 10 cents per acre at the end of each year until operations begin.

Second. It is a sale of the minerals in place upon condition subsequent; the condition being that title vests in them "forever" and so long as some of the substances named are being produced in "paying quantities," if some of the minerals are discovered in paying quantities. That it is a sale of minerals upon condition subsequent, and not of any part of the surface, is clearly declared by both the granting and the habendum clauses of the instrument; it grants the minerals named, "in and under the land described," provided "that in no event shall the grant run for longer than five years from date of possession, unless some of the substances are being produced in paying quantities, and forever, if they are."

In other words, it conveys the substances named themselves in the ground, and not simply the right to take them from the ground. Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989.

As to its further construction, Upshur county owned these lands; the commissioners' court of that county exercising their judgment and discretion, as they were permitted to do by law, concluded that there might be found oil, gas, or other mineral substances underneath the lands, which, if developed (produced), would or might be of greater value to the school funds for a time than could be realized by its sale for its surface value, and having found the defendants who were willing to spend money to prospect the lands and pay for such minerals as might be discovered, these parties, by mutual consent, entered into the contract which we are called upon to construe.

The contract itself clearly discloses that the primary purpose of the commissioners was to sell the mineral and dispose of such parts of the surface of the lands, in form of easements, as might be necessary to accomplish the act of producing such minerals as might be found, for such moneyed consideration as then decided would be a reasonable value thereof after they were brought to the surface; and it is just as clear that the defendants' purpose was to make a profit out of the transaction by producing some one or more of the minerals in paying quantities and by a sale thereof. There is no charge that there were any fraudulent misrepresentations which induced its execution, nor that there was any mutual mistake. So looking to the contract itself, is it subject to the criticisms in plaintiff's petition: (1) That it is unilateral; (2) that the consideration is uncertain; (3) or that it is without consideration, in that it attempts to give away any of the property designated, whether mineral in place or the lands' surface? As to the charge that, if defendants find oil in paying quantities, they are not obligated to develop it or market it: The contract provides that they shall "produce it in paying quantities." To "produce" means "to bring forth," and the contract further provides that, "should oil be found (produced) in paying quantities," the defendants are to pay the price fixed to the plaintiff, and there is nothing said about whether it shall be sold or not. As to the provision:

"In case gas alone is found in paying quantities, the plaintiff shall be paid. * * * So long as same is conveyed and sold commercially off of the premises or used on the premises for manufacturing purposes"

—it must be given a meaning in accord with the provision next above in the contract, viz., that the life of the grant is five years unless some of the substances are being produced in paying quantities. It would not do to construe this sentence to mean that the defendants were granted the right to occupy and enjoy the whole of those lands because gas had been found, leaving it to the defendants to, or not to, dispose of it off the ground, or on it, at their own discretion; but the natural meaning is that the defendants shall produce it in paying quantities, and to within a reasonable time find a market off the premises, or to secure manfacturing enterprises to be placed upon the premises. These are but matters that could and should have been in contemplation of the parties at the time of entering into this contract. The language used, too, indicates that this idea was in the minds of the parties, for the fact that the instrument grants right of way for railroads, dirt roads, pipe lines, mills, machinery, etc., indicates that the parties realized that the lands were isolated from large cities where gas in large quantities might be marketed, and away from centers of railway transportation necessitating providing means for marketing of their own, and for that reason it would require time and much money expended in providing for placing this substance upon the market. The grant of the easements is no more than the law would have read into a deed conveying a portion of this land in the center of the tract. It must be borne in mind, too, that no part of the surface of these lands is granted to de-

fendants for agricultural or grazing purposes, but solely for those purposes definitely fixed in the instrument, to wit, producing in paying quantities some of the minerals named. With this in mind, it follows as a natural sequence that, when the defendants shall have failed to so produce one or more of them within five years, and should they thereafter cease to produce them, the possession reverts to Upshur county, eo instanti, for in law they would have by such failure abandoned their rights under the contract to further occupy the land.

Can it logically be construed to be a division of the minerals named in consideration of their development? It reads:

"That Upshur county * * * lessor * * * in consideration of the sum of $5.00 cash * * * and other valuable considerations and the further considerations hereinafter mentioned * * * do hereby devise and grant unto the Thomasons all of the following described minerals, * * * oil, gas, etc., * * * in and under the following described land."

What is the price fixed by the commissioners' court?

"Should oil be found in paying quantities the second parties hereby agree to pay first party the market value of same at the well or wells as follows: From all wells producing one thousand barrels or over of oil per day twelve and one-half per cent. or so much thereof as may be sold and delivered."

It seems but logical that by this language the commissioners' court concluded that 12½ per cent. of the value of the oil on the market was its full value in place, and I think have clearly fixed this as its price "in place," and is in no sense a gift of any part of the oil.

The manner and terms of the sale are left to the commissioners' court. Waggoner v. Wise Co., 17 Tex. Civ. App. 220, 43 S. W. 839; Delta County v. Blackburn, 100 Tex. 55, 93 S. W. 419. And they have decided that the value of the occupancy of the surface of the ground and of the minerals as they were, in place, shall be the price fixed in the contract; that it may now be worth more would not void the contract. Taber v. Dallas County, 101 Tex. 241, 106 S. W. 332. So since it provides for a definite consideration, it was not a gift, nor is it unilateral because it provides for mutual benefits and obligations.

Is there anything in that portion of the contract which provides that the defendants may select a town site not exceeding 1,000 acres to be blocked, laid out in streets, etc., to void the contract? It does not provide that any portion of such town site shall be given to defendants; therefore it will be presumed that they would be required to pay the reasonable value of any part conveyed to them. And if read in connection with the further provision of the contract:

"In case the lands described in the contract are sold or released during the life of this contract the parties of the second part are to have a 60 days' option to purchase or lease said lands on such price terms and conditions as may be prescribed by the commissioners' court of Upshur county, at the time of sale, etc."

—it is clear that there is nothing in it to void the contract. For when the time should arrive to establish this town site, the sale to defendants is to be made at such valuation as may then be agreed upon.

The plaintiff having charged that the defendants had not begun to produce any of the minerals named within the life of the contract, five years, and the defendants having entered a general denial, and specially pleaded that it had discovered some of the minerals within the time, and believing, as I do, that the contract is valid, it follows that this question should have been inquired into by the trial court, and for this purpose I conclude that the cause should be remanded.

I therefore enter my dissent.